# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

AmeriCU Mortgage Company,

     Plaintiff,

v.

Steven Frazier,

     Defendant.

**12-cv-3118 (MJD/SER)**

**<u>REPORT AND
RECOMMENDATION</u>**

---

Jonathan W. Tappan, Esq., Jonathan W. Tappan PLLC, 2549 Somerset Boulevard #102, Troy, Michigan 48084, for Plaintiff.

David R. Mortensen, Esq., Wilford, Geske & Cook, PA, 8425 Seasons Parkway, Suite 105, Woodbury, Minnesota 55125, for Plaintiff.

Todd M. Murray, Esq., Friedman Iverson, PLLC, 509 First Avenue Northeast, Suite 2, Minneapolis, Minnesota 55413, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on AmeriCU Mortgage Company's ("AmeriCU") Motion for Judgment on the Pleadings ("Motion" or "Mot.") as to Steven Frazier's ("Frazier") liability. [Doc. No. 25]. This matter has been referred to the undersigned for the resolution pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1. (Order of Reference Dated June 12, 2013) [Doc. No. 41]. For the reasons stated below, the Court recommends denying the Motion.

## I.     BACKGROUND

### A.     Factual Background

The Amended Complaint alleges the following facts:  on October 15, 2006, Frazier and Felecia Lockett ("Lockett") completed a Uniform Residential Loan Application (the

"Application") seeking a residential mortgage loan (the "Loan") on a real property in Minneapolis.[1] (Amended Compl.) [Doc. No. 14 at ¶ 1]. Frazier submitted the Application to Honeywell Federal Credit Union which is now known as Endura Financial Federal Credit Union, (collectively referred to as, "Honeywell/Endura"). (*Id.*). The Loan closed on December 15, 2006, and required Frazier to make monthly mortgage payments.[2] (*Id.* ¶ 9). The Loan was assigned to Towne Mortgage Company ("Towne"), a company directly affiliated with AmeriCU.[3] (*Id.* ¶¶ 1, 15). AmeriCU sold the Loan to Federal National Mortgage Association ("Fannie Mae"), and eventually the Loan went into default. (*Id.* ¶¶ 16–18). During an investigation of the default, Fannie Mae discovered that Frazier had entered into two loans (collectively, the "Undisclosed Loans") but had not disclosed those loans on the Application. (*Id.* ¶ 18). After the investigation, Fannie Mae required AmeriCU to re-purchase the Loan from Fannie Mae for $131,531. (*Id.* ¶¶ 18–20).[4]

---

[1]     Originally, Lockett was also a party to this action. *See* (Compl.) [Doc. No. 1]. AmeriCU voluntarily dismissed Lockett because it did not believe Lockett had any part in the alleged fraudulent conduct. (Amended Compl. ¶ 1); (Order Dismissing Party) [Doc. No. 8]. Lockett was also on the Application, but because she is no longer a party to the action she will be left out of the Court's discussion, which will instead focus on Frazier.

[2]     Frazier actually completed two Uniform Residential Loan Applications ("URLA") for the same Minneapolis property, one on October 15, 2006 and one on December 15, 2006. *See* (URLA Applications, Exs. 1, 2, Attached to Compl.) [Doc. No. 1–1, 1–2]. Both URLA applications provided the same terms, and it is unclear why two applications were necessary. The fact that two URLA applications were completed does not impact the Court's recommendation. The Court will refer to both ULRA Applications attached to the Complaint in a singular fashion throughout its recommendation and "Application" will be used to indicate both of the URLA applications completed for the Loan.

[3]     Honeywell/Endura and AmeriCU entered into an agreement in 2005 whereby Honeywell/Endura would "originate residential mortgage loans and, and subsequently, assign and/or sell some of these loans to Plaintiff [AmeriCU]." (Amended Compl. ¶ 7).

[4]     After AmeriCU had to repurchase the Loan from Fannie Mae, AmeriCU demanded that Honeywell/Endura re-purchase the Loan from AmeriCU; Honeywell/Endura refused. (Plaintiff's Mem. in Supp. of Motion for Judgment on the Pleadings, "AmeriCU's Mem. in Supp.") [Doc. No. 29 at 5 n.8]. AmeriCU brought a breach of contract suit against Honeywell/Endura in the

Both the Undisclosed Loans were entered into prior to the closing of the Loan. [5] *See* (*id.*

¶¶ 13–14).  The Application for the Loan, which was signed by Frazier, required him to:

> List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. . . . .

(URLA Applications, at 19, 24);[6] (Amended Compl. ¶¶ 8, 10–11).

In addition, the Application provided that Frazier:

> [S]pecifically represent[ed] to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns [that] . . . (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability;  . . . (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to the closing of the loan.

(URLA Applications at 20, 25); (Amended Compl. ¶¶ 8, 10–11).

AmeriCU alleges that if Frazier disclosed the Undisclosed Loans on the Application, Honeywell/Endura would not have approved Frazier for the Loan.  (Amended Compl. ¶ 21).  Then, AmeriCU contends, it would never have purchased the Loan from Honeywell/Endura.  (Amended Compl. ¶¶ 22–23).[7]

---

Eastern District of Michigan, which is currently pending.  (*Id.*).  The Michigan case citation is: *AmeriCU v. Endura*, 13-cv-10275 (E.D. Mich.).

[5]    The Undisclosed Loans include one entered into by Frazier on approximately October 30, 2006, with Bank of America, N.A. making Frazier liable for $135,000.  (*Id.* ¶ 13).  The second loan was entered into on around November 1, 2006, making Frazier liable for $17,985.  (*Id.* ¶ 14).

[6]    Although the ULRA Applications are not attached to the Amended Complaint, they were attached as exhibits to the Complaint and the Amended Complaint explicitly refers to those attachments.  *See, e.g.*, (Amended Compl. ¶¶ 8, 10, 11).

[7]    Although AmeriCU is not asking the Court for a judgment on damages, it asserts that the damages it suffered included damages from Frazier's default and non-payment of the Loan and

In his Answer, Frazier admits to signing the Application, and acknowledges that the Application states that he is required to disclose any other debts for which he was responsible or was planning to become responsible. (Def.'s Answer to Am. Compl.) [Doc. No. 24 ¶¶ 9, 11–12]. Frazier also concedes that the Loan agreement required him to amend or supplement the Application if there was a material change after he completed the Application and before the Loan closed. (Id.). Frazier admits the Application did not disclose either of the Undisclosed Loans.[8] (Id. ¶¶ 14–15). Frazier, however, denies completing the Application himself. (Id. ¶ 9). Frazier admits the Loan went into default and the property was foreclosed upon. (Id. ¶ 33). Frazier also raises affirmative defenses suggesting AmeriCU's claims may be barred by the applicable statute of limitation, standing issues, anti-deficiency of Minnesota's foreclosure by advertisement statute, AmeriCU's failure to satisfy the pleading requirements of Rule 9 for its fraud claim, Frazier's lack of intent to defraud, or by the affirmative defenses of the Federal Rules of Civil Procedure.[9] (Id. at 6–7).

## B.    Procedural History

AmeriCU filed this action on December 14, 2012. (See Compl.). AmeriCU's Complaint alleged three counts against Frazier stemming from his failure to list the Undisclosed Loans on the Application: (1) fraud in the inducement; (2) fraud; and (3) intentional misrepresentation.

---

AmeriCU's payment to Fannie Mae for the losses incurred on Frazier's default. (Mem. in Supp. at 18).

[8]      Frazier's admissions refer specifically to the "October 15, 2006 application." *See* (Answer to Amended Compl. ¶¶ 14–15). Frazier, however, states in his memorandum in opposition to this motion "For reasons that are unclear, a second loan application was prepared . . . Although Frazier signed the *loan applications* and concedes that the *two loans were not disclosed on them*, he denies having any intent to conceal the loans." (Mem. in Opposition, "Frazier's Opp'n") (emphasis added) [Doc. No. 43 at 3]. Whether Frazier intends to refer to both ULRA Applications or just the one completed on October 15, 2006 does not impact the Court's overall recommendation which is based on causation: whether AmeriCU suffered harm as a result of Frazier's failure to list the Undisclosed Loans.

[9]      The Court does not address Frazier's affirmative defenses because the Court finds AmeriCU's Motion should be denied without having to reach Frazier's affirmative defenses.

*See* (Compl.).  Lockett, a defendant in the original Complaint, was voluntarily dismissed as a party to this action.  (Order Dismissing Party).  Frazier filed his Answer to the Complaint on January 9, 2013.  (Answer to Complaint, "Frazier's Answer") [Doc. No. 9].  AmeriCU then filed its Amended Complaint against Frazier, asserting the same causes of action, on January 28, 2013.  (Amended Compl.).  Frazier, who had appeared *pro se* up to this point, was referred to the Pro Se Project, administered by the Minnesota Chapter of the Federal Bar Association ("FBA").  (Letter Referring Litigant to FBA Pro Se Project Dated Feb. 27, 2013) [Doc. No. 19].  Todd M. Murray entered an appearance on Frazier's behalf in March 2013.  (Notice of Appearance) [Doc. No. 20].  On March 25, 2013, Frazier filed an Answer to the Amended Complaint.  (Answer to Amended Compl.).  Then AmeriCU filed this Motion.  (Mot. for Judgment on the Pleadings).

## II.    DISCUSSION

### A.    LEGAL STANDARD

AmeriCU seeks a judgment on the pleadings finding Frazier liable to AmeriCU for fraud, fraud in the inducement, and intentional misrepresentation as a matter of law.  (*Id.*).  Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough so as not to delay trial.  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is appropriate when there are no material facts to resolve and the moving party is entitled to judgment as a matter of law."  *Mills v. City of Grand Forks*, 614 F.3d 495, 497–98 (8th Cir. 2010) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002)).  "An issue of fact is deemed to be material if the outcome of the case might be altered by its resolution one way rather than another."  *Poindexter v. Pohlmann*, No. 08-cv-1186 (JNE/JJK), 2009 WL 455803, at *2 (D. Minn. Feb. 23, 2009) (citing *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am.*, 627 F.2d 853, 855 (8th Cir.

1980) (quotation omitted)). A written instrument attached as an exhibit to a pleading is treated as part of the pleading and can be considered on a Rule 12(c) motion for judgment on the pleadings. *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1087 (D. Minn. 2000) (JRT/RLE) (citation omitted). When deciding a motion for judgment on the pleadings, the Court must "view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party." *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (citation omitted).

### B. ANALYSIS

At the outset, the Court notes the unique nature of the Motion before it. Most motions for judgment on the pleadings seek dismissal of claims, not judgment as a matter of law. In addition, despite the prevalence of cases similar to the one at bar that evolved after the recent mortgage crisis, neither the parties nor the Court were able to find a similar case in which a plaintiff was granted judgment on the pleadings holding the defendant liable as a matter of law.

Based on the applicable legal standard, "[t]he motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1367 (3d ed.). Federal Rule of Civil Procedure 8 provides, "[i]n responding to a pleading, a party must . . . admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b). "A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial." Fed. R. Civ. P. 8(b)(5).

### 1.    Fraud—(Count 2)

Because Frazier's claims for fraud in the inducement and intentional misrepresentation require elements similar to those required for a fraud claim, the Court first deals with AmeriCU's claim for fraud, even though it is not Count 1 of its Amended Complaint.

In support of its fraud claim AmeriCU claims, the following facts: Frazier intentionally and falsely concealed from Honeywell/Endura that he had applied for and was granted the Undisclosed Loans.  (Amended Compl. ¶ 35).  Frazier, on the Application, represented that he disclosed all loans upon which he was responsible or intended to become responsible.  (*Id.* ¶ 36).  Frazier had a duty to disclose the Undisclosed Loans and he knew of his duty at the time of the Application but knowingly and intentionally concealed them.  (*Id.* ¶¶ 37–39).  Frazier intended for Honeywell/Endura to rely on his failure to list the Undisclosed Loans and Honeywell/Endura did rely on them.  (*Id.* ¶¶ 40–41).  But for Frazier's misrepresentation he would not have qualified for the Loan, and the Loan would not have closed.  (*Id.* ¶ 42).  AmeriCU suffered significant damages as a result of Frazier's failure to list the Undisclosed Loans on the Application.  (*Id.* ¶ 43).

Frazier denies outright or for a lack of information all of AmeriCU's allegations in support of its fraud claim.[10]  (Answer to Amended Compl. ¶¶ 35–44).

The elements of fraud under Minnesota law include:

(1) a false representation of a past or present material fact which was susceptible of knowledge, (2) the defendant knew the representation was false or made it without knowing whether it was true or false, (3) an intention to induce plaintiff to act in reliance on the misrepresentation, (4) the representation caused the

---

[10]    Although Frazier denies that he had a duty to disclose the other loans, he admits that "the loan application and mortgage contract required him to disclose all debts and liabilities that he was liable for and that the loan agreement states that he was obligated to amend or supplement the information provide in the application if the material facts that he represented should change before the loan closed." (Answer to Amended Compl. ¶ 11).

plaintiff to act in reliance thereon, and (5) and the plaintiff suffered pecuniary damage **as a result of** the reliance.

*Teng Moua v. Jani-King of Minnesota, Inc.*, 810 F. Supp. 2d 882, 890 (D. Minn. 2011) (emphasis added) (citation omitted).

AmeriCU cannot establish that it is entitled to judgment as a matter of law because there is a remaining controverted issue of material fact concerning whether AmeriCU's pecuniary damages resulted from Frazier's failure to list the Undisclosed Loans on the Application. AmeriCU states in its Amended Complaint: (1) Honeywell/Endura relied on the Application, (2) Frazier would not have qualified for the loan but for his failure to list the Undisclosed Loans, and therefore (3) the Loan would then never have closed if the Undisclosed Loans had been listed on the Application. (Amended Compl. ¶¶ 41–42). Frazier denies for a lack of information that the Loan would not have closed but for his misrepresentations. (Answer to Amended Compl. ¶ 43).

Viewing the facts pleaded by Frazier as true and granting all reasonable inferences in his favor, there is still an issue of material fact: whether AmeriCU suffered pecuniary damage **as a result of** its reliance on Frazier's failure to include the Undisclosed Loans on the Application. Additionally, there is no showing that AmeriCU would not have bought and subsequently sold the Loan if Frazier had listed the Undisclosed Loans on the Application. There is a question of material fact, then, as to whether the Loan would have still closed and AmeriCU would have still bought the Loan if Frazier listed the Undisclosed Loans on the Application. Because there is a controverted issue of material fact AmeriCU is not entitled to a judgment on the pleadings for its fraud claim.

### 2. Fraud in the Inducement—(Count 1)

In support of its fraud in the inducement claim AmeriCU claims the following facts: Frazier intentionally and falsely represented to Honeywell/Endura that he fully disclosed all

loans for which he was responsible, knowing at the time of execution that this was false and intending to induce Honeywell/Endura into accepting the Application and granting the Loan. (Amended Compl. ¶¶ 25–27). Honeywell/Endura reasonably relied on Frazier's misrepresentations and but for Frazier's failure to include the Undisclosed Loans on the Application, he would not have qualified for the Loan and the Loan would not have closed. (*Id.* ¶¶ 30–31). After the Loan closed, Frazier failed to make payments and the Loan went into default and was foreclosed upon, causing AmeriCU damages, including its forced repurchase of Frazier's Loan. (*Id.* ¶¶ 32–33).

Frazier denies outright or for a lack of information all of AmeriCU's allegations in support of its fraud in the inducement claim with the one exception being Frazier's admission that the Loan went into default and was foreclosed upon. (Answer to Compl. ¶¶ 26–34).

A claim for fraud in the inducement "is only different from a common-law fraud claim in that it requires a claim that the fraud contributed to the formation of a contract." *Target Corp. v. LCH Pavement Consultants, LLC*, 12-cv-1912 (JNE/JJK), 2013 WL 4400390, at *6 (D. Minn. Aug. 9, 2013) (citing *Welch v. Buller,* 481 N.W.2d 856, 859 (Minn. Ct. App.1992)); *see also TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 11-cv-2717 (JRT/AJB), 2012 WL 3031220, at *5 (D. Minn. July 25, 2012) (citing *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.Q.ws 359, 368 (Minn. 2009)) ("To succeed on a claim of fraudulent inducement, TCF must show that Market— with intent to induce reliance—made a false representation of material fact susceptible of knowledge, with knowledge of its falsity, that the representation did in fact induce reliance, and that TCF suffered damages as a result."). "In the context of contract negotiations, the elements of fraud in the inducement are essentially the same as those for fraud." *Lahti v. Countrywide Bank, FSB*, 12-cv-629 (ADM/FLN), 2012 WL 4815075, *2 (D. Minn. Oct. 10, 2012) (citing

*Vandeputte v. Soderholm,* 216 N.W.2d 144, 146 (Minn.1974)). A claim for fraud in the inducement will only succeed if the defendants have not met their contractual obligations. *Id.* (citing *Wixon Jewelers, Inc. v. Di–Star, Ltd.*, 218 F.3d 913, 914 (8th Cir. 2000)).

Frazier specifically denies, due to a lack of information, that the Loan would not have closed but for his misrepresentations. (Answer to Am. Compl. ¶ 32). Therefore, this claim suffers from the same defects as AmeriCU's fraud claim. Viewing the facts pleaded by Frazier as true and granting all reasonable inferences his favor, there is still an issue of material fact as to whether AmeriCU suffered pecuniary damage as a result of its reliance on Frazier's failure to include the Undisclosed Loans on the Application. AmeriCU, therefore, is not entitled to a judgment on the pleadings for its fraud in the inducement claim.

### 3.    Intentional Misrepresentation—(Count 3)

In support of its intentional misrepresentation claim, AmeriCU claims the following facts: Frazier represented to Honeywell/Endura that he fully disclosed all loans for which he was responsible or intended to become responsible, with knowledge that this representation was false. (Amended Compl. ¶¶ 45–48). Frazier made the misrepresentation with the intent to induce Honeywell/Endura into accepting the Application and granting the Loan. (*Id.* ¶ 49). Honeywell/Endura was induced and reasonably relied on Frazier's misrepresentations and but for Frazier's misrepresentation, Frazier would not have qualified and the Loan would not have closed. (*Id.* ¶¶ 50–51). As a result of the misrepresentation and Honeywell/Endura's reliance, Honeywell/Endura granted the Loan and Frazier defaulted on it which forced AmeriCU to repurchase the Loan, a loss directly attributable to Frazier's intentional false representation. (*Id.* ¶¶ 52–53).

Frazier denies outright or for a lack of information all of AmeriCU's allegations in support of its intentional misrepresentation claim. (Answer to Amended Compl. ¶¶ 46–54).

Under Minnesota law, a claim for intentional misrepresentation requires:

(1) There must be a representation; (2) That representation must be false; (3) It must have to do with a past or present fact; (4) That fact must be material; (5) It must be susceptible of knowledge; (6) The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false; (7) The representer must intend to have the other person induced to act, or justified in acting upon it; (8) That person must be so induced to act or so justified in acting; (9) That person's action must be in reliance upon the representation; (10) That person must suffer damage; (11) **That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury**.

*Mack v. Britto Cent., Inc.*, 13-cv-197 (SRN/JJG), 2013 WL 4015565, at *7–8 (D. Minn. Aug. 6, 2013) (emphasis added) (citing *Florenzano v. Olson,* 387 N.W.2d 168, 174 n.4 (Minn. 1986)).

Frazier denies for a lack of information that the Loan would not have closed but for his misrepresentations. (Answer to Amended Compl. ¶ 52). Just as with AmeriCU's other two claims, its intentional misrepresentation claim is not supported with facts asserted and admitted in the pleadings. Viewing the facts pleaded by Frazier as true and granting all reasonable inferences his favor, there is still a material fact as to whether AmeriCU suffered pecuniary damage as a result of its reliance on Frazier's failure to include the Undisclosed Loans on the Application. AmeriCU, therefore, is not entitled to a judgment on the pleadings for its intentional misrepresentation claim.

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that AmeriCU's Motion for Judgment on the Pleadings [Doc. No. 25] be **DENIED**.

Dated: October 29, 2013

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **November 12, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.